IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| G.P. A MINOR BY AND THROUGH HIS NEXT FRIEND, CAROLINA NARVAREZ. | § § § | |
| PLAINTIFF, | § | C.A. NO. <u>7:24-cv-109</u> |
| v. | § § § | |
| IPS ENTERPRISES, INC.; and the IDEA PUBLIC SCHOOLS, INC.- DEFENDANTS. | § § § § | **<u>JURY DEMAND</u>** |

**<u>PLAINTIFF'S ORIGINAL COMPLAINT</u>**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW G.P., by his next friend and mother Carolina Navarez, ("Plaintiffs" herein) and files their *Original Complaint* alleging that the IPS ENTERPRISES, INC., (hereinafter referred to as 'IPS") and the IDEA PUBLIC SCHOOLS, INC. (hereinafter referred to as "the School Board"); collectively called the Texas IDEA Defendants, have violated the various rights of G.P. as more fully discussed below and are liable to him, jointly and severally, thereby. Plaintiffs reserve the right to replead if new claims and issues arise upon further development of the facts, as permitted by law. In support thereof Plaintiffs would respectfully show this tribunal the following:

**I. <u>INTRODUCTION</u>**

1. The IPS Enterprises, Inc. is a private not-for-profit entity, whose mission is to provide supervision and management services to the IDEA Charter School network in Texas, Louisiana, Florida and Ohio. Such services include but are not limited financial planning, development of policies, procedures and practices of the State and Local IDEA Charter School programs, coordinate staff training, supervision and personnel issues, control of

      intellectual property, purchase and lease property for school buildings and others services, equipment and maintenance. Importantly, and most relevant to this case, the IPS Defendant failed to develop policies, procedures and practices to assure that children at any of the Texas IDEA Public School, when taken from a local campus at the end of the school day, to an off-site after school care facility, were taken from campus safely.

2.    G.P. is a student with significant disabilities. He attended the IDEA Charter School at the Edinburgh Campus at all time relevant to this complaint.  There staff permitted him to be picked up at the end of the school day by a pedophile and not surprisingly, was assaulted. Accordingly, he files suit against the IPS Defendant for various violations of the common law. Additionally, he files suit against the IDEA Public Schools for failing to assure he received necessary accommodations so as to remain safe, thus violating his civil rights to free from discrimination based upon disability, pursuant to Section 504 of the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. §794 and the Americans With Disabilities Act, 42 U.S.C. 12131 et seq., ("ADA").  Further, Guillermo P. has plausible claims his civil rights pursuant to the United States Constitution, as contemplated by the Equal Protection Clause and Due Process Clause of the 14th Amendment and remedied by 42 U.S.C. Section 1983, were likewise violated by the IDEA Public School.

## II. JURISDICTION

3.    Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and §1343 because the matters in controversy arise under the Constitution and laws of the United States.

4.    Additionally, this Court has jurisdiction over his state and common law claims pursuant to 28 U.S.C.A. §1367.

## III. VENUE

5. Pursuant to 28 U.S.C. §1391 this Court is the proper Venue over this cause, as all events and omissions giving rise to Plaintiff's claims occurred in the Southern District of Texas, McAllen Division.

## IV. PARTIES

6. Plaintiff G.P. is a minor who lives with his mother, Carolina Navarez in Edinburg, Texas. he was a student at an IDEA Public Schools, for all times relevant to this cause.

7. The Defendant IPS, Inc. is a 501(c)(3) Tax-Exempt Organization. It files a separate tax return from the entities noted below. The Principal Office is at 2115 W. Pike Blvd, Weslaco, Texas 78596. The Mission of the IPS Enterprises is to provide grades Pre-K through 12 Public Charter School management services to IPS managed organizations across the country. IPS supports these organizations, now in Texas, Louisiana, Florida and Ohio by providing expertise and personnel and by owning and leasing school buildings and equipment. It's Principal Officer and Chairman of the Board is the Honorable Collin Sewell. Plaintiffs reasonably believe that he may be served by and through attorneys with the Law Firm of SCHULMAN, LOPEZ, HOFFER & ADELSTEIN, LLP., 9011 Mountain Ridge Dr., Ste. 210, Austin, Texas 78759, [Telephone] (512) 840-0022. [Facsimile] (210) 538-5384.

8. The Defendant IDEA Public Schools, Inc. is located at 2115 W. Pike Blvd, Weslaco, Texas 78596. It's Superintendent is the Honorable Dr. Jeff Cotrell. Plaintiffs reasonably believe that he may be served by and through attorneys with the Law Firm of SCHULMAN, LOPEZ, HOFFER & ADELSTEIN, LLP., 9011 Mountain Ridge Dr., Ste. 210, Austin, Texas 78759, [Telephone] (512) 840-0022. [Facsimile] (210) 538-5384. It coordinates IDEA Charter School Services across the State of Texas. It has Regional and Local Boards

of Directors. This Defendant also includes the Texas Rio Grande Regional Board and the IDEA Public Schools Inc. Edinburg Campus is located at 2753 N. Roegiers Rd., Edinburg, Texas 78541.

## V. FACTS

A. THE IPS ENTERPRISES, INC. DEFENDANT

9. As noted above, the IPS, Enterprises Inc. is a 501(c)(3) Tax-Exempt Corporation. It's *Mission* is to provide grades Pre-K through 12 public Charter School management services to IDEA managed organizations. IPS supports the organizations, including but not limited to the Texas IDEA Public Schools noted below, by providing management services including expertise in Charter School Management and Operations, policies and procedures and practices, staff training and personnel, intellectual property, management and staffing services, charter school buildings, sites, certain equipment. Its goal is to expand the network of IDEA Charter Schools noted below. Additionally, the IPS owns a significant amount of property and leases it to various entities in local communities including and especially the leasing of school buildings and necessary equipment for the operation of these Charter Schools. The IPS manages and has over $200,000,000 in assets.

B. THE IDEA CHARTER SCHOOL DEFENDANT

10. Separate and apart from the IPS Defendant is the IDEA Public Schools, which is a separate nonprofit organization authorized to provide Charter School Services in Texas, Ohio, Louisiana, and Florida. The Superintendent of the various IDEA Charter School Affiliates in Texas is the Honorable Dr. Jeff Cotrell. He oversees a number advisory boards. In Texas there are currently seven (7 such ) Regional Board of Directors; San Antonio, Austin, El Paso, the Greater Houston and Permian Basin areas, Tarrant County and the Rio Grande

Valley. The Rio Grande Valley Division has 26 campuses, one of which is in Edinburg, Texas where the Plaintiff attended school. The Texas IDEA Defendant receives state funding on a per-student basis, and also receive federal funding and grant funding. As of August 2022, IDEA received over $3 billion in funding in state and federal funding since its funding in 2000.

11. According to U.S. News, IDEA has an annual revenue of approximately $668 million. Approximately 77% of IDEA's revenue is from state funding; approximately 15% is from federal funding; and approximately 8% is from local funding.[1]

C. THESE DEFENDANTS HAVE BETRAYED THE PUBLIC TRUST

12. In or around the same time that G.P. was assaulted, these Defendants were accused and determined to be responsible for the fraudulent and inappropriate use of public funds. Specifically, Defendants sought to purchase and/or lease a private jet plane for $15 million.[2] The Defendants had also been spending approximately $400,000.00 of public funds on tickets to the San Antonio Spurs basketball games for members of the National, Regional and Local Boards.[3] In 2019, IDEA spent approximately $1 million on a boutique hotel in Cameron County for unknown reasons.[4]

13. Moreover, in 2020 and 2021, following a very public scandal, paid out several large severance packages to Board Members. Specifically, in or around April 2020, Co-Founder

---

[1]. https://www.usnews.com/education/k12/texas/districts/idea-public-schools-106588.

[2]. https://www.chron.com/news/houston-texas/education/article/texas-idea-charter-school-jet-17379545.php.

[3]. https://www.houstonchronicle.com/news/houston-texas/education/article/After-jet-backlash-IDEA-charter-schools-curbing-15017880.php.

[4]. https://www.progresstimes.net/2021/10/29/idea-sues-texas-attorney-general-to-keep-hotel-purchase-records-secret/.

and then-CEO Tom Torkelson was paid approximately $900,000.00 and removed from his position after accusations of misconduct and mishandling of funds.[5] Relatedly, in or around July 2020, then-CFO Wyatt Truscheit resigned abruptly, amid accusations of he misusing public funds to purchase personal items and services, such as haircuts, groceries, dry cleaning, and even condoms.[6]

14. In or around May 2021, then-CEO JoAnn Gama was removed from her position and paid an undisclosed amount, purportedly due to the misuse of the organization's funds and resources. Ms. Gama reportedly used public funds to purchase clothing, hotel rooms, rental cars, monster truck show tickets, world series baseball game tickets, and personal electronic devices included but not limited to ten (10) laptop computers, nine (9) pairs of high-end headphones, seven (7) iPads, and additional tech accessories.[7] Notwithstanding these activities she was paid approximately $475,000 in a buy-out by the Defendants. Also in or around May 2021, then-CFO Irma Munoz was removed from her position and paid an undisclosed amount, also purportedly for the misuse of the organization's funds and resources.[8]

15. Further, in 2023 alone, at least three then-current or former teachers from various IDEA schools were arrested for inappropriate relationships with minor children. In at least two of these cases, the minor children victims were students at IDEA schools. In or around January

---

[5]. https://www.progresstimes.net/2023/04/10/idea-claims-former-cfo-used-corporate-credit-card-to-pay-for-condoms/

[6]. *Id.*

[7]. *Id.*

[8]. https://www.houstonchronicle.com/news/houston-texas/education/article/IDEA-Public-Schools-fires-CEO-chief-operating-16202852.php.

2023, a teacher at the IDEA Mission campus, Karen Sosa, was arrested for an improper sexual relationship with a student.[9] In or around September 2023, a teacher at the IDEA Rio Vista campus, William D. Patterson, was arrested for having an improper sexual relationship with a student.[10] And in or around December 2023, a substitute teacher at the IDEA Health Professions campus in Austin, Alexander Jeffrey Hill, was arrested and charged with 'indecency with a child sexual contact.'[11]

16. Just last week, on or about March 8, 2024 the Texas Education Agency (TEA) placed the IDEA Charter School Defendant under *conservatorship* for improper spending and other misconduct. The TEA hired two professionals to oversee finances and make sure the IDEA is spending money as required under the law. As part of the settlement between the TEA and IDEA, the IDEA will return over $28,700,000 to the United States Department of Education in grants and formula funding, that should have been used on students and were not.

17. This failure to use monies for the educational needs and safety of children, especially for those with a disabling condition like G.P. is exemplified in the IPS Defendant's failure to provide the Texas IDEA Charter School- Edinburgh Campus any written policies and/or procedures, and financial support to address the safety of students leaving the campus at the end of the day. Nor does it provided any written policies and/or procedures regarding relationships with day care and after school providers in the community. At the time of the

---

[9]. https://www.krgv.com/videos/former-idea-teacher-charged-with-improper-relationship-with-a-student-out-on-bond/.

[10]. https://cbs4local.com/news/local/idea-public-schools-teacher-accused-of-having-sexual-intercourse-with-student-twice-william-david-patterson-idea-private-school-crime-el-paso-texas-socorro.

[11]. https://cbsaustin.com/news/local/substitute-teacher-at-east-austin-school-charged-with-indecency-with-a-child.

incident where the child was assaulted and sexually molested, as more fully addressed below, anyone could come to pick up any student at the Edinburgh Campus without any legal right to do so, consent or prior authorization. Moreover the IPS Defendant failed to train staff on how to respond to concerns that a child was being picked up from campus by a person unauthorized or ill-suited to do so, or both.

.B.     ABOUT PLAINTIFF

18. G.P., a minor Plaintiff was born on February 10, 2013. He is currently 11 years old, and has multiple disabilities. He has been diagnosed with Autism and needs assistance with his daily care including feeding and toileting.  He is cognitively low-functioning and is non-verbal.  At the time of the incident made the basis of this complaint. he was attending the IDEA Charter School at its Edinburg Campus.  He was first enrolled in or around the Fall of 2017 and was un-enrolled in or around May 2022.

19. Plaintiff's mother, Carolina could not pick him up each day when the final school bell rung. Instead she contracted with Bright Stars Montessori Learning Center, (hereinafter referred to as "Bright Stars") to provide after school daycare services for her son.  Ms. Anita Flores was the Director of Bright Stars at this time.  Carolina authorized Flores and Bright Starts to pick up her son at the end of the school day after being transported from the IDEA campus pick up point and drive him to Bright Star's property until the end of her workday.

20. Importantly, the IPS Defendant did not provide any financial resources, develop any policies or procedures ("P&P") for the IDEA Charter School campuses to have an agreement in place with local Day Care and After School Care Centers, to assure the safe transportation of students to and from the IDEA Charter School Campus to any specific after-school care program. There were no sign-out P&P.  There were no P&P assuring drivers were correctly

licensed or had a history of safe driving. There were no P&P in place to assure drivers did not have a criminal record or other relevant history that foreclosed close contact with children. Rather, Staff at the Edinburgh Campos apparently permitted any vehicle with a known exterior decal, from whatever after-school program its students might be attending, to pick up children, without concern about who was driving. Without doubt the Edinburgh Campus was not provided any direction by the IPS Defendant on the safe transition of students from school to a private provider.

21. After the final school bell rung at the IDEA Edinburgh Campus on or about October 4, 2021, that campus staff member and a IDEA's employee, Ms. Judith Cano, took Guillermo to the student drop off/pick up area. There he was met, not by Anita Flores, but by Jorge Flores, Anita Flores' son. Jorge had numerous misdemeanor and felony convictions for driving while intoxicated, several convictions for failing to identify himself as a fugitive to law enforcement with an intent to give false information, a number of reckless driving convictions, theft convictions, felony evading arrest convictions, and even a conviction for assault. He should not have been driving at all, let alone picking up children to bring to his mother's day care program.

22. Moreover, Jorge Flores was not authorized to pick up her son. Edinburgh Campus Staff also failed to ask Ms. Cano failed to confirm that Jorge Flores was authorized to pick up her son. In fact Ms. Cano was not aware that Jorge Flores was associated with the Day Care Center.

23. It was a well-known safety practice, and likewise required by law, to always put children in the back seat of a car or van, when picking the child in order to transport them to a day care or after school care center. Nevertheless on that day, Jorge instructed Ms. Cano not to place Guillermo in the vehicle's back seat but instead, told her to placed him in the front seat. She

did. Likewise, Jorge expressly ordered Ms. Cano not to have Guillermo's seat belt affixed, also as legally required but rather to permit him to sit in the front seat without a seat belt on as all. Obviously Cano had not received training on such situations and Jorge Flores slowly drove away. In doing so, Ms. Cano later reported she did observe Jorge grab the child's head and push it towards Jorge's lap over the center console. Here agin, Cano was obviously not trained on how to respond to this situation either and did nothing to stop Flores from driving away. She also realized Flores appeared to mentally disturbed. At some point Cano became alarmed. Again, and without any relevant training, instead of immediately contacting local law enforcement, Cano informed her supervisor, Mrs. Ortiz.[12] Mrs. Ortiz, likewise ill-trained, for such a situation, she too failed to contact local law enforcement, but instead informed the child's mother. After being told her son had been released to a stranger, Carolina immediately contacted the Edinburg Police department to report the incident. He was finally picked up and able to go home but the damage had been done.

24. Investigator Moreno with the Edinburg Police Department confirmed that G.P. was assaulted by Jorge Flores after being released to him by Edinburgh IDEA Campus Staff. Even though Moreno believed G.P. was a victim of sexual assault he could not confirm it due to his inability to speak and tell anyone what happened to him verbally. Nevertheless, and like many children with such disabling conditions and the inability to speak, he was able to communicate though other means, including and especially through his behaviors that he was sexually molested.

25. Specifically, and soon after the assault G.P. began acting out at home and in the community,

---

[12]. It is unknown to Plaintiff what Mrs. Ortiz's first name is. At the time, she was the assistant principal or principal at the IDEA Edinburg campus.

in ways that were obviously abnormal to his mother. He began acting out in a more and more aggressive manner, and even started grabbing the genitals of male and female teachers. His behaviors tell us what his voice could not- that he was sexually molested by Jorge Garcia.

## VI.  CLAIMS PURSUANT TO THE COMMON LAW

26. Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth. In addition, each sentence and paragraph below, likewise incorporates by reference as if fully set forth herein, the ones above it.

A.  NEGLIGENCE

27. Plaintiff alleges that the IPS, Inc. Defendant was negligent in their duties to assure te Texas Affiliates had policies, procedures and practices in place to assure the safe transfer of students like Guillermo P., from an IDEA Campus to a third party after school care center.

28. Plaintiff further alleges that the IPS, Inc. Defendant was negligent in their duties in that they failed to correctly supervise staff.

29. Plaintiff alleges that the IPS, Inc. Defendant was negligent in their duties in that they failed to correctly train staff.

30. Guillermo P. suffered damages because of such negligence.

31. The IPS, Inc, Defendant was grossly negligent by such failures.

B.  BREACH OF FIDUCIARY RELATIONSHIP

32. Such acts and omission by the IPS Enterprises, Inc. Defendant violated their fiduciary duties as to G.P. which proximately caused injuries to him and they are thus liable to him thereby.

## VII. STATE ACTION

33. At all relevant and material times the IDEA Charter School Defendants and Texas Affiliates

were recipients of federal and state funds, and was thus public facility as contemplated federal and state law.

## VIII. CLAIMS OF DISCRIMINATION BASED UPON DISABILITY

A.  SECTION 504 OF THE REHABILITATION ACT OF 1973

34. The IDEA Charter School Defendant receives federal funds and thus must follow the requisites of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504"). The jurisprudence and implementing regulations of Section 504 require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled student's unique and individualized needs, and fails to accommodate that child's disability and keep the student safe, it violates Section 504.

   1.  FAILURE TO PROVIDE FAPE

35. The IDEA Charter School Defendant failed to provide the Student a *Free Appropriate Public Education* as contemplated by the Rehab Act, and discriminated against him thereby.

   2.  PROFESSIONAL BAD FAITH OR GROSS MISJUDGMENT CLAIM

36. Also, in addition to and in the alternative to the above, Plaintiffs assert that the IDEA Charter School Defendant demonstrated professional bad faith or gross misjudgment and/or mismanagement of the G.P.'s educational plan, also as contemplated by the Rehab Act, and discriminated against him thereby.

   3.  FAILURE TO KEEP SAFE CLAIM

37. In addition and in alternative to the above, the G.P. asserts that the IDEA Charter School Defendant failed to provide him a safe and non-hostile educational environment, and as such

he is a victim of discrimination based upon disability also pursuant to Section 504.

    4.    FAILURE TO ACCOMMODATE CLAIM

38. The above noted facts also support a plausible claim the IDEA Charter School Defendant "failure to accommodate" his disabilities pursuant to the Rehab Act and similar to the ADA claim noted below.

B.    THE AMERICANS WITH DISABILITIES ACT

39. In addition, and in the alternative to the above, the facts as previously described demonstrate the IDEA Charter School Defendant violated the Americans with Disabilities Act, 42 U.S.C. § 12131,, et. seq. ("ADA") also for the failure to reasonably accommodate G.P. based upon his disabilities.

### IX. CLAIMS PURSUANT TO THE U.S. CONSTITUTION

40. The Student has a constitutional right to life, liberty and the pursuit of happiness while at school. Additionally, he has a property interest in his education, also giving rise to protection contemplated by the United States Constitution.

A.    CLAIMS RELATED TO THE 14th AMENDMENT TO THE CONSTITUTION

41. Plaintiffs assert that the Texas IDEA Board of Directors failed to sufficiently train staff to address the needs of children in general, and especially those needs of a student with disabilities like Plaintiff, thereby violating Plaintiff's rights pursuant to the 14th Amendment to the United States Constitution, for which he seeks recovery pursuant to 42. U.S.C. § 1983.

42. In addition, Plaintiffs contend that the IDEA Board of Directors failed to sufficiently supervise staff in regard to addressing the needs of children in general, and especially a child with disabilities like G.P.

43. Such failures by the IDEA Board of Directors were a moving force in violating the rights of

G.P. as contemplated by Due Process of the Fourteenth Amendment of the Constitution of the United States, for which he seeks recovery pursuant to 42 U.S.C. § 1983.

B.   EQUAL PROTECTION CLAIMS

44. Such failures by the Texas IDEA Board of Directors was a moving force in violating the rights of G.P. as a class of one, as contemplated by the Equal Protection of the Fourteenth Amendment of the Constitution of the United States for which he seeks recovery pursuant to 42 U.S.C. § 1983.

C.   POLICY AND PRACTICE OF THE LOCAL BOARD

45. During the relevant time period contemplated by this cause of action, the Texas IDEA Board of Directors by and through its designees—had an actual policy, practice, and custom of conscious and deliberate indifference to federal and state law, federal and state administrative directives, regarding the treatment of G.P. Specifically and among other things the IDEA Board failed to assure that monies received from the federal and state governments were actually provided to its students, including G.P. Taken together, such failures were a moving force in the injuries to G.P. for which he seeks recovery pursuant to 42 U.S.C. §1983.

## X.   RATIFICATION AND RESPONDEAT SUPERIOR

46. The IPS, Inc. Defendant is responsible for all the acts and omissions of staff persons as contemplated by the theory of *Respondeat Superior*.

47. The IDEA Charter School Board also ratified the acts, omissions and customs of staff employed by this Defendant for the violation of G.P.'s rights under the United States Constitution.

48. The IDEA Charter School Board is also responsible for all the acts and omissions of staff

persons as contemplated by the theory of *Respondeat Superior* for the violation of G.P.'s civil rights under the Rehab Act and ADA.

## XI.  DAMAGES

54. As a direct and proximate result of the Defendants failures, jointly and severally, G.P. and his family have suffered the following injuries and damages, for which they are entitled to recover within the jurisdictional limits of this court:

    a. Normal, incidental, and nominal damages;

    b. Restitution including costs of cure;

    c. Loss of consortium;

    d. Reimbursement for past medical expenses;

    e. Reimbursement for future medical expenses;

    f. Reimbursement for past mental health expenses;

    g. Reimbursement for future mental health expenses;

    h. Reimbursement for past mental anguish;

    i. Reimbursement for future mental anguish,

    j. Reimbursement for past educational costs;

    k. Reimbursement for future educational costs;

    l. Costs of representation;

    m. Various out-of-pocket expenses incurred by the family but for the acts and omissions of these Defendants; and

    n. Any such other relief that a Jury can give in law or in equity or both.

## XII. DEMAND FOR A JURY TRIAL

55. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all issues

in this matter.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays in the manner and particulars noted above, for the Court to enter a judgment against Defendants, jointly and severally, in an amount sufficient to fully compensate him for the elements of damages enumerated above, judgment for damages, recovery of attorney's fees and costs for the preparation and trial of this cause of action, equitable relief requested and for its appeal if required, pursuant to Section 504, Title II of the ADA, the United States Constitution, and the common and state law, as well as the equitable issues noted above, and for other such relief that this Court may deem just and proper in law, equity, or both.

Respectfully submitted,

/s/ Hitesh K. Chugani
Mr. Hitesh K. Chugani, Esq.
Texas State Bar No. 24066519
hkclaw1@gmail.com [Email]; and

Mr. Yusuf S. Ansari, Esq.
Texas State Bar No. 24105047
yusuf@ansarilawpllc.com [Email]

HKC Law Firm, PLLC
517 West Nolana St., Suite 7
McAllen, Texas 78504
(956) 212-1601 [Telephone]
(956) 524-5153 [Facsimile]; and

Mr. Martin J. Cirkiel, Esq.
Texas Bar No. 00783829
Federal ID No. 21488
marty@cirkielaw.com [Email]
Cirkiel Law Group, P.C.
1901 E. Palm Valley Blvd.
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]